Thank you, your honor. May it please the court. My name is Jerome Zamos, Z-A-M-O-S. I'm here appearing on behalf of appellants Medranos. There are essentially three issues that I think this appeal or this argument centers upon. The first is the substantive nature and the definitions within the statute, the RESPA statute, as to what a qualified request is. The second is a procedural issue as to the dismissal. Excuse me. At least she didn't throw it at you. This is a good sign. Well, I guess after a while... I'll take care of it. As the cases come. I have your case now. Okay, thank you. The second issue is basically a substantive issue dealing with the dismissal of a cause of action involving both the husband and wife in this case, which was dismissed as part of the original complaint that came into the district court. And the third is a procedural substantive issue as under the RESPA statute dealing with when a cause of action based upon nondisclosure occurs. Can I ask you a question about your RESPA claim? Sure. Let's assume for a second you're right, that there was a violation of the RESPA statute here. What are your damages? Well, in this case, first of all, that's obviously a question of fact. No, no. Just tell me what relief could you get were there a violation of the RESPA statute? Well, there are general damages in the form of the tension that was generated in this case by this long period beginning in March and extending into the ultimate one. Let me ask the question differently because I'm not sure. We're missing each other here. Let's assume that you had asked for servicing information on the loan. Yes. In one of these communications and you didn't get it. Yes. What relief do you get? Is the foreclosure sale enjoined? Well, it's too late for that. Okay. That's one of the problems. Is the deed reformed? It's too late to do that. Okay. So what damages do you get? Well, potentially, had the statute worked in the way that we contend it should have worked, there would have been meaningful negotiations. We would have worked out the problem, and ultimately, perhaps there would have been no foreclosure. So your damage theory is that had there been an appropriate response, there would have been a settlement of some unspecified kind, and that would have been the measure by which. See, one of my difficulties here is that your clients aren't paying on the loan. They were. They stopped. What? They stopped. No, they didn't. See, that is not. No. They were paying on the loan that they thought they had as opposed to the amount. Right. Their payments were being accepted. So we have this extended period of time. This is not a case where you have a borrower who is refusing to make payments. This is a case in which you have a borrower who didn't understand the terms of the loan for whatever reason, which is one of the issues that I think we needed to get into in the process. So let me just finish your theory then. Your theory is that had you had appropriate communications, the loan would have been modified so that the monthly payment was the amount your clients were paying as to the amount that they should have been paying? Potentially, yes. But you're asking for damages, so I'm trying to figure out what your theory is. I understand that, but let's go back to the basic way that litigation is supposed to proceed in the federal courts, and this is another issue that is raised in this case. We had no discovery. We don't know how valid our claims were in this case because we never got the loan files. We asked for the files under Rule 26. Arguably, you would have expected it under the whole theory of the discovery statutes going back to Hickman. You're not supposed to have a game theory. But here was a lawsuit where we absolutely got stonewalled from the minute we came into the federal courts. We were denied access to the information that perhaps would have helped us be in a better position to respond to the court's inquiry. I don't know what Flagstar knew or didn't know. I don't know what Flagstar's relationship was to the originating parties. All I know is that we, starting in March, communicated to them that there was a problem and there was a clear misunderstanding as to the terms of this loan, and my client during this entire period of time was doing everything they could to maintain possession entitled to a property that they were induced to purchase because they were led to believe they could afford it, and then the next thing they know, the terms are different than they were explained to them, and they're put through all this aggravation. Now, at a minimum, that aggravation has some value in the law. They shouldn't have been exposed to that aggravation. They spend the next almost a year trying to keep this loan up to the extent of their ability. The whole purpose of these statutes is to... The opposing counsel is arguing that the type of information your clients were asking for is not what's contemplated under the QWR. Now, there's certainly a lot of case law on that, and you cite Catalan as being the case going the other way. Do we have to follow Catalan in order for you to win on this issue? I think you have to follow the statute, which Catalan did. So the answer is I think if you didn't follow, and with all due respect, if you didn't follow Catalan, I think you would not be following the statute. And here's where we get down to a core issue. What's served as a flag star, I take it, is the servicer of the law. That's right. Your contention is not – your contention is that way back at the beginning, even though the documents seem to reflect a payment consistent with what the flag star says, in other words, there's not enough money to cover – there's not enough money in the $1,900-a-month payment to cover the servicing of the loan, that somebody made a misrepresentation to your clients. How does that deal with servicing of the loan? Because you go to the statute and see what they're supposed to do. I guess here's the problem, and it gets – Well, let me change it a little bit. What if the seller of the house said to them, this is a great house, it was a terrible house? Would you get that information from flag star, or would you get it from the people who you might have sued here were the people who made the misrepresentation? With all due respect, Your Honor, I think that the statute that we're dealing with deals with a different issue. If I've got a problem, if I've got a problem, it used to be you're dealing with a lender that you walk into the branch and you say, hey, this isn't the deal. But we don't live in that world anymore. We've got this big world with everybody not knowing each other. So Congress enacts a statute and says – But, Counselor, it doesn't necessarily solve all possible problems. The statute is designed to solve one slice of problems, not necessarily all problems. But I think that the slice of the problem is bigger than flag star is saying. And you take the wording of the statute itself. This says for information relating to the servicing of such loan. And I guess the case is narrowly interpreting that, say it has to be about servicing, not about loan origination. I think it says something more than that. I think if you go to E-1-B-I-I, it says includes a statement of the reasons for the belief of the borrower to the extent applicable that the account is an error. And that is exactly the point. The statute doesn't deal with or differentiate between the source of the error. It gives the borrower an opportunity if there is an error. And perhaps in this situation where they aren't the source of the error, it's even more important to address – to have some vehicle to address that problem. Counsel, we understand your position and you have exceeded your time. I'm sorry. We've asked a lot of questions, so you may have a minute for rebuttal when the time comes. Thank you. Just wanted to emphasize a point. Counsel, introduce yourself for the record, please. My name is Roland Reynolds. I'm counsel on behalf of Defendant Flystar Bank. Good morning. Good morning. One point that Baird is saying that wasn't emphasized in the papers is that these institutional servicers deal with qualified written requests daily and understand the time periods for responding to them are very, very aware, particularly in this environment where there's lots of conflict due to the financial crisis, about responding to them. And to the extent we create a larger definition than the statute would seem to bear as to what involves a QWR, it's going to create very difficult institutional problems. But why isn't Catalan right? I mean, when I read the statute, it doesn't seem that narrow. It says it includes a statement of reason that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. So it's like other information, perhaps limited by the context. But I don't see why Catalan's interpretation is erroneous. Well, I don't think Catalan talked. The problem with it is it's difficult to know what the letter was that they were talking about in Catalan. So these are very fact-based, you know, and to know the extent is difficult in that case. But they say, Catalan says, any reasonably stated written request for account information can be a qualified written request. And as I read the letters that they were sending to Flagstar, it said, we think you're charging us the wrong amount. I mean, that sounds like account information. Why is that wrong? Because it's, it has, it was in the context of a dispute regarding the origination terms. Clearly, that's what the letters were about. So why not respond? I'm sorry, Your Honor? Why not respond? I think they did respond. We did respond. Right. So if you do respond, what is the RESPA measure of compliance? Of? In other words, your first point is it's tough to respond to all these, but you did respond. Yeah. So what's the measure? The response actually is just to have responded. You don't actually have to solve the problem and so forth. So what's the measure of the compliance of the response? What's the measure? What's the measure of the sufficiency of the response for RESPA purposes? Well, it's not well-documented, but it seems to be very low, meaning that the fact that you responded to the request and did have some response and you did it within the timeline that's required by the statute. Did you respond or did you acknowledge receipt? There was a response to one of them but not to all of them, so I'm interested in that. I don't know that. And another thing about your point, Your Honor, is that, you know, the statute has been, through Dodd-Frank, has been expanded a little bit. The QWs are about the information you have to give and so forth, and about having to, for instance, identify the holder of the loan if you're asked to. And I think that expansion kind of indicates that there was a narrow focus on this before. And it's very interesting, counsel's last point, which was, gee, even if it isn't something the servicer did, it's important, it's even more important that you, the servicer respond. And that's exactly not what the QWR process is for. It's for our own mistakes. Shouldn't your response in this have been, no, this is the right amount. It's calculated correctly. You may have a dispute with somebody else. I believe it was, Your Honor, but I just want to make that representation. And so the statute says, well, if you don't, I mean, they specify appropriate responses, and one of them is you can explain why you don't have the information or you can't obtain it. I mean, so if it was something that only the lender knew, that's one of the appropriate responses. So why doesn't it contemplate that it might be information that you don't have? I'm sorry. I didn't understand. Would you respond? So the you get a qualified written request, and the statute says you are off the hook if you respond and say we look for the information, but we don't have it, you have to call the lender. That's set out in the statute. I mean, that suggests that Congress intended that the QWR could relate to information the servicer doesn't have. Well, I mean, under that line of reason, I think, then, Your Honor, that any request would be almost any subject would require a response within the timeline regarding the QWR, even if it has no relationship to the servicing issue, that you have an obligation to say that it has no relation to the servicing issue. That maybe is a good idea, but it's not in the statute, and I don't think it's outside the statute. Well, I don't think that's what we have here, right? I mean, the letter was saying the amount you're charging us is wrong. So that's clearly within the framework of a loan and a loan servicer. Right. And believe me, Your Honor, there's been lots of back and forth. We have lots of communication back and forth that we don't agree with this, with their position about the origination. I we did not brief the issue of how we respond to this thing or bring it up. I don't want to give you the impression. I think what I'm hearing is you have the impression that we've kind of stonewalled them and we could have done something easy and so forth. I don't think that's correct, but I'm not prepared to give you all the specifications because it's not on the record. I'm sorry. I didn't mean to interrupt you. As I understand it, the letters that were sent, which are in the record, are all essential. This is our legal position letters. We think the loan, the escrow amount should be $1,900 rather than $2,600. I'm rounding. And we think that you ought to – and we're current under that theory of the case that we want to continue to pay at that amount. And your response was, no, that's not what the documents show. Right. Is that a fair summary of the letters? That's a fair summary. And to point out, you know, these were all letters written by counsel. To counsel. One of them. In the third instance. In the third instance. Does that matter? Why can't it qualify? It can be. It matters. It doesn't matter as a matter of your legal analysis, Your Honor. Let me ask both ends of the question. Does it matter whether a written request comes from a lawyer representing the borrower? And does it matter with respect to the third letter that the letter was sent to the servicer? Do those factors render the qualified written request definition inapplicable in some way? Absolutely as to the third one. The request to – there's no – there's – the request sent to the letter to the attorney is not a QWR. It's cited in the authority for that.  Well, the case has a key. I know a case says it, but those of us who just wanted to read the statute. Well, I think what it says is that it doesn't – it provides, statute provides that you can send it to the agent of the servicer, but it doesn't – I'm sorry, that an agent of the borrower may send in the written request. But the flip side is not in the statute which has sent it to the agent of the servicer. I mean, it would be kind of strange. Lawyers are generally, when they're in litigation, prohibited from writing to the other side directly. If the lawyer writing the letter knew the counsel for the other side was – it would be strange to disqualify the letter because the lawyer followed general ethical procedures in sending it to the lawyer rather than the client. And I understand that. And I – it's a quandary, although the borrower is still obviously free to communicate directly to them. And to answer your first question, I just want to be completely honest. I don't think there's – as to the first two letters, there's a statutory, you know, problem with it. But I look at these and I think about what the standard of clarity is in the QWR, and then when we have it from a lawyer instead of a borrower, it's – you know, it's pretty easy if the lawyer wants to say that this is a QWR. You know, my co-counsel is standing up, but I don't want to take his time. You've taken almost all of it. He has one. He may have the rest. Well, you didn't leave him time. But if you stop now, he has – please stop the clock. We'll give him a minute to – we're adding a minute for the – so we'll hear from your co-counsel. All right. Are we – are we finished? Yes. Thank you very much. If you want him to have any time, you're welcome. I absolutely do. Thank you. Thank you. Good morning, Justice. Thank you very much for allowing me some time here. I'm Dale Arakawa, and I represent the Strategic Sales and Marketing, Jane Kelleher and Janice Mendoza. We're basically the on-site brokers at the facility. My issue is separate and distinct from the battle that plaintiff is having with the loan servicer. My issue deals with whether or not my clients were involved in a kickback or an unearned fee. We addressed plaintiff's – plaintiff's Second Amendment complaint in our motion to dismiss, but basically plaintiff has two allegations, that the payments made to plaintiff's own broker and the payments made to plaintiff's own lender somehow amount to a fee – an unearned fee or a kickback that falls within the RESPA 2607 section violation. As we have fully reviewed this issue, this just does not seem to, you know, qualify or quantify it as a kickback or an unearned fee. We understand your position, and you've used your minute. Okay. Thank you. Thank you very much. Mr. Samos, you have a minute for rebuttal. Thank you, Your Honors. I will try to be quick. First of all, the record is clear that they didn't respond. They did, in our mind, Stonewall with reference to – they totally ignored the first two letters. There was no response. There was no response to anything until the third letter, which is the letter that they clearly understood what they were talking about. It clearly identified the loan. It was clearly set forth. And ironically, the district judge held that the problem with the third letter was the fact that it wasn't sent to, directly to Flagstar, the lender. So, to some extent, the argument of counsel concedes that the argument that they successfully made in the district court and the argument upon which the district judge held that the third letter wasn't a QWR because, quote, it wasn't sent directly, it was sent to counsel, he concedes that's an error. Counsel, you have used your time. It's just one quick point. You've used your time. Thank you. Thank you very much. The case just argued is submitted, and we appreciate very much the comments of all counsel as we sort through the answer to this challenging case.
judges: Graber, Ikuta, Hurwitz